UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEUTSCHE BANK SECURITIES INC., <br><br> Plaintiff, <br><br> v. <br><br> KINGATE GLOBAL FUND LTD. and KINGATE EURO FUND LTD., <br><br> Defendants. | Case No. 19-cv-10823 |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Date:  July 15, 2020

Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
Lena Konanova
Oscar Shine
Ronald J. Krock
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com
lkonanova@selendygay.com
oshine@selendygay.com
rkrock@selendygay.com

*Attorneys for Defendants Kingate Global Fund Ltd. and Kingate Euro Fund Ltd.*

## **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.  DBSI'S COMPLAINT MUST BE DISMISSED BECAUSE DBSI CONCEDES ITS ALLEGED CONDITION PRECEDENT IS NOT EXPRESS .....................................2

II. DISMISSAL SHOULD BE WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE WHETHER THE LETTER IS TYPE I OR TYPE II .....................2

    A.  The Letter Is Best Read As A Type II Agreement, Which Was Not Breached By The Funds ....................................................................................3

        1.  DBSI Fails To Show The Letter Is A Type I Agreement ...........................3

        2.  DBSI Fails To Allege Any Breach Of A Type II Agreement......................6

    B.  Even If The Letter Were Read As A Type I Agreement, DBSI Breached And So Cannot Sue The Funds ...................................................................7

        1.  DBSI Materially Breached Any Type I Agreement ...................................7

        2.  DBSI Failed To Perform Within A Reasonable Time ................................9

III. DBSI DOES NOT MEANINGFULLY DEFEND ITS CLAIM FOR A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ...............10

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*,
   821 F.3d 297 (2d Cir. 2016)..................................................................................................2

*Bear Stearns Inv. Prods., Inc. v. Hitachi Auto. Prods. (USA), Inc.*,
   401 B.R. 598 (S.D.N.Y. 2009)..............................................................................................4

*Bourne v. Walt Disney Co.*,
   68 F.3d 621 (2d Cir. 1995)...................................................................................................8

*Brown v. Cara*,
   420 F.3d 148 (2d Cir. 2005)..............................................................................................3, 4

*CAC Grp. Inc. v. Maxim Grp. LLC*,
   523 F. App'x 802 (2d Cir. 2013) .........................................................................................3

*Crossroads Mortg. Corp. v. Columbia Equities*,
   1997 WL 363809 (S.D.N.Y. Jul. 1, 1997) ...........................................................................3

*Deephaven Distressed Opportunities Tradings, Ltd. v. 3V Capital Master Fund Ltd.*,
   954 N.Y.S.2d 46 (N.Y. App. Div. 2012) .............................................................................6

*DeRosa v. Nat'l Envelope Corp.*,
   595 F.3d 99 (2d Cir. 2010).................................................................................................10

*DiBartolo v. Battery Place Assocs.*,
   84 A.D.3d 474 (N.Y. App. Div. 2011) ..............................................................................10

*DKR Capital, Inc. v. AIG Int'l W. Broadway Fund, Ltd.*,
   2003 WL 22283836 (S.D.N.Y. Oct. 2, 2003) ......................................................................9

*Emigrant Bank v. UBS Real Estate Sec., Inc.*,
   854 N.Y.S.2d 39 (N.Y. App. Div. 2008) .............................................................................5

*FCOF UB Sec. LLC v. Morequity, Inc.*,
   663 F. Supp. 2d 224 (S.D.N.Y. 2009)..................................................................................3

*Gas Natural, Inc. v. Iberdrola, S.A.*,
   33 F. Supp 3d 373 (S.D.N.Y. 2014).....................................................................................7

*Goldman Sachs Lending Partners, LLC v High River Ltd. P'ship*,
   943 N.Y.S.2d 791 (N.Y. Sup. Ct. 2011) ..............................................................................6

*Houbigant, Inc. v. IMG Fragrance Brands, LLC*,
   2009 WL 5102791 (S.D.N.Y. Dec. 18, 2009) ..................................................................2

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
   274 F.3d 706 (2d Cir. 2001)..........................................................................................11

*L-7 Designs, Inc. v. Old Navy, LLC*,
   964 F. Supp. 2d 299 (S.D.N.Y. 2013).........................................................................6, 7

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012).............................................................................3

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
   660 N.E.2d 415 (N.Y. 1995)...........................................................................................2

*In re Parmalat Sec. Litig.*,
   421 F. Supp. 2d 703 (S.D.N.Y. 2006).............................................................................3

*Reis, Inc. v. Spring11 LLC*,
   2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016).................................................................2

*Savasta v. 470 Newport Assocs.*,
   623 N.E.2d 1171 (N.Y. 1993).........................................................................................9

*Seaport Glob. Sec. LLC v. SB Grp. Holdco, LLC*,
   162 A.D.3d 466 (N.Y. App. Div. 2018) ......................................................................5, 6

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004)..............................................................................................9

*Starter Corp. v. Converse, Inc.*,
   170 F.3d 286 (2d Cir. 1999)............................................................................................8

*Stonehill Capital Mgmt., LLC v. Bank of the W.*,
   68 N.E.3d 683 (N.Y. 2016).............................................................................................5

*Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*,
   670 F. Supp. 491 (S.D.N.Y. 1987) ..............................................................................3, 5

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
   487 F.3d 89 (2d Cir. 2007)..............................................................................................5

*U.S. Bank Nat'l Ass'n v. Kahn Prop. Owner, LLC*,
   118 N.Y.S.3d 369 (N.Y. Sup. Ct. 2019) .........................................................................7

*Vacold LLC v. Cerami*,
   545 F.3d 114 (2d Cir. 2008)............................................................................................5

*Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*,
    2015 WL 5671724 (S.D.N.Y. Sept. 22, 2015) ................................................................. 3, 6

*Yang v. Mic Network, Inc.*,
    405 F. Supp. 3d 537 (S.D.N.Y. 2019) ............................................................................... 8

**PRELIMINARY STATEMENT**

Nearly a decade since entering the Letter Agreement, having never spent a single dollar to settle the bankruptcy claims at issue, DBSI tries to salvage its strike suit against the Funds by fabricating factual disputes. That effort fails. DBSI's Opposition ("Opp.") confirms that DBSI's claims are premised on a "condition precedent" that simply does not exist.[1] DBSI concedes that the alleged condition—that the Customer Claims be Allowed before DBSI performs—is not expressed in unmistakable language, as required by New York law. DBSI's claims must be dismissed on this basis alone. *See* Point I.

DBSI's Complaint should be dismissed with prejudice because it cannot amend to state viable claims. Indeed, DBSI neither suggests it can amend nor seeks permission to do so. DBSI acknowledges the Letter is unambiguous; its meaning is thus a question of law the Court can resolve on a motion to dismiss. DBSI does not meaningfully refute that the Letter left open many material terms, showing the parties entered a Type II agreement to negotiate in good faith. Because DBSI alleges no facts that demonstrate the Funds acted in bad faith, it has not plausibly claimed breach of that agreement. *See* Point II.A. Even if the Letter were read as a Type I agreement, DBSI's own allegations admit that it was not integrated, so the Court must look to the parties' negotiations for context. The draft PSAs—which DBSI cited heavily and thereby incorporated into its Complaint—show the parties intended that DBSI pay to settle the Trustee's lawsuit against the Funds, which would in turn Allow the claims. But DBSI did not pay, let alone within a reasonable time, materially breaching any Type I agreement and excusing the Funds' performance. *See* Point II.B. Whether the Letter is Type I or Type II, DBSI cannot state a claim.

---

[1] Except as otherwise indicated, defined terms have the same meaning as in the Funds' Opening Brief ("Br.") (Dkt. 24).

Finally, DBSI does not defend its claim for breach of the implied covenant of good faith and fair dealing. DBSI fails even to explain, much less adduce any authority for, its premise that insolvent entities in foreign liquidation proceedings act in bad faith when they seek domestic recognition of that foreign liquidation pursuant to statute. *See* Point III.

## ARGUMENT

### I. DBSI'S COMPLAINT MUST BE DISMISSED BECAUSE DBSI CONCEDES ITS ALLEGED CONDITION PRECEDENT IS NOT EXPRESS

DBSI does not dispute that conditions precedent must be stated in "unmistakable language." Br. 12 (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995)). Though "talismanic words" are not required, Br.12; Opp.20, DBSI cannot identify any language in the Letter unmistakably setting out the purported condition precedent—that the Customer Claims must be allowed before DBSI must perform—on which all its claims depend. To the contrary, DBSI concedes the alleged condition precedent is not expressed unmistakably because it asks the Court to *infer* the condition from extrinsic circumstances supposedly "understood" by the parties. Opp. 20. Nor does DBSI dispute that, absent unmistakable language, at best, New York courts infer "promises rather than conditions precedent." Br. 13 (quoting *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 306 n.8 (2d Cir. 2016)). The Complaint should be dismissed for this reason alone. *See Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *7 (S.D.N.Y. Sept. 26, 2016); *Houbigant, Inc. v. IMG Fragrance Brands, LLC*, 2009 WL 5102791, at *3 (S.D.N.Y. Dec. 18, 2009).

### II. DISMISSAL SHOULD BE WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE WHETHER THE LETTER IS TYPE I OR TYPE II

This Court should dismiss DBSI's claims with prejudice because, on DBSI's own allegations, the Funds have not breached their obligations under any plausible reading of the Letter. The Letter is best read as a Type II agreement, and the Complaint demonstrates the parties reached

2

impasse without any bad faith by the Funds. Even if the Letter were a Type I agreement, the Complaint and documents incorporated therein demonstrate DBSI never performed under that agreement. Accordingly, DBSI's assertion that the Court "need not determine whether the [Letter] is a Type I or Type II agreement," Opp. 9, is immaterial. Whether the Letter is Type I or Type II can be resolved as a matter of law, and, under either scenario, DBSI fails to state a claim.[2]

### A.     The Letter Is Best Read As A Type II Agreement, Which Was Not Breached By The Funds

#### 1.     DBSI Fails To Show The Letter Is A Type I Agreement

DBSI's concession that the Letter "is not ambiguous," Opp. 17, confirms that the answer to whether the Letter is Type I or Type II is "patent in the language of the [agreement]," presenting the Court with "a pure issue of law," *Brown v. Cara*, 420 F.3d 148, 154–58 (2d Cir. 2005), which the Court can resolve at the pleading stage. The Court may examine the Complaint and the Letter to conclude it is Type II. *See, e.g.*, *Worldwide Servs., Ltd. v. Bombardier Aerospace Corp.*, 2015 WL 5671724, at *15 (S.D.N.Y. Sept. 22, 2015); *CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 804 (2d Cir. 2013).[3]

DBSI effectively concedes the Letter lacks many essential terms. Glaringly, while DBSI

---

[2] DBSI's citations to *FCOF UB Sec. LLC v. Morequity, Inc.*, 663 F. Supp. 2d 224 (S.D.N.Y. 2009) and *Crossroads Mortg. Corp. v. Columbia Equities*, 1997 WL 363809 (S.D.N.Y. Jul. 1, 1997), Opp. 9–10, are inapposite. In those cases, the parties disputed whether there was an enforceable agreement at all; here, the parties agree the agreement is enforceable but disagree whether it is Type I or Type II.

[3] DBSI asserts *Worldwide Servs.* and *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 357 (S.D.N.Y. 2012), held agreements were Type II because those agreements were unsigned. Opp. 13. But an executed contract like the Letter also can be Type II. *See, e.g.*, *Brown*, 420 F.3d at 151; *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 494 (S.D.N.Y. 1987). And *Worldwide Servs.* and *Nat'l Gear* indisputably hold that unsigned contracts can show the parties' intent as to the nature of a prior or separate agreement. Here, the draft PSAs relied upon by DBSI, Compl. ¶¶ 19, 20 & n.2, show the parties did not intend the Letter to be Type I.

3

asserts that a purported condition precedent as to "Allowance of the Customer Claims" is essential, *see* Opp. 19–20, that term is nowhere on the face of the Letter, *see* Point I, *supra*.  By DBSI's own pleadings, then, the Letter is Type II.  DBSI also cannot contest that its Complaint reveals other significant open terms, including the funding and resolution of any settlement with the Trustee, Compl. ¶¶ 17, 40, 45, and whether DBSI would be a third-party beneficiary of the contemplated settlement, *id.* ¶ 28.  Moreover, DBSI admits that negotiations on these and other open terms continued for months after execution of the Letter.  Br. 20 (citing Compl. ¶¶ 27, 30).[4]  Such open terms "create[] a presumption against finding a binding contract as to the ultimate goal," and "support finding *a binding Type II agreement*." *Brown*, 420 F.3d at 158 (emphasis added).[5]

That the Letter includes *some* material terms—the identity, amount, and price of assets, Opp. 13–14—does not mean it contains *all* material terms.  In *Bear Stearns Investment Products, Inc. v. Hitachi Automotive Products (USA), Inc.*, 401 B.R. 598, 605, 617 (S.D.N.Y. 2009), for example, an agreement to sell exactly this type of claim was Type II because it omitted material terms including "impairment or buy back, right to defend and indemnification," even though the agreement also specified "the price, type (i.e. secured or unsecured) and amount of the [Claims]." Here, too, the unrebutted existence of open, material terms shows the Letter was Type II.

DBSI asserts, incorrectly, that the Letter did not include "language in the Agreement

---

[4] DBSI's contention that some terms are "moot" now that the claims have been Allowed, Opp. 14, makes no sense.  If any material terms were left open when the Letter was executed—as DBSI effectively concedes—then the agreement was Type II.

[5] While DBSI cites statements from the 2011 litigation, it does not dispute that arguments from that dismissed lawsuit are not binding.  Br. 16 (quoting *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006)).  Otherwise, DBSI would be bound now to its 2011 pleading that "*[t]he Confirmation Letter did not set forth all material deal terms*; rather, it included only certain agreed-upon terms, with the balance of the terms *to be negotiated* and set forth in definitive documentation." 2011 DBSI Counterclaim ¶ 50 (emphases added).

4

reserving the right to not be bound in the absence of a further, definitive written instrument." Opp. 11 (citation and quotation omitted). In fact, the Letter contained exactly such a reservation: the "Transaction is *subject to* execution of a Purchase and Sale Agreement (governed by New York law) in a form that is reasonably and mutually agreed between Seller and Buyer and which Seller and Buyer shall negotiate in good faith." Br. 7–8 (quoting Letter at 2). DBSI cites inapposite cases to sidestep this clear language. Opp. 11–13. Unlike the parties in *Vacold LLC v. Cerami*, 545 F.3d 114 (2d Cir. 2008), who "foresaw no dispute" about further "boilerplate" documentation, *id.* at 128–29, the parties here expressly foresaw the need to "*negotiate*" a final PSA. Letter at 2 (emphasis added). DBSI's other cases do not address the Type I and Type II framework, and any final agreements there were mere formalities requiring no negotiation.⁶ These cases involved auctions, which are governed by distinct legal doctrines, including presumptions that a seller's acceptance of a bid forms a binding contract and that final agreements are formalities absent explicit terms to the contrary. *See Stonehill Capital Mgmt.*, 68 N.E.3d at 689.

DBSI's assertion that the Letter cannot be Type II because it states it was "binding," Opp. 12, is simply wrong. *Tribune* found an agreement Type II, even though it "stated that the borrower and lender had made a 'binding agreement,'" because that agreement was "subject to the preparation and execution of final documents satisfactory to both sides," 670 F. Supp. at 491, just as the Letter here was subject to negotiation of a final PSA. And unlike the Letter here, the

---

⁶ *See Stonehill Capital Mgmt., LLC v. Bank of the W.*, 68 N.E.3d 683, 689 (N.Y. 2016) ("terms of the sale were preset," as bids required execution of a "pre-negotiated asset sale agreement" given to the bidder before the auction); *Emigrant Bank v. UBS Real Estate Sec., Inc.*, 854 N.Y.S.2d 39, 41 (N.Y. App. Div. 2008) ("Any later agreement to be executed was limited to terms substantially the same as those in the agreement posted on the bidding Web site and was to contain the standard industry representations and warranties."); *Seaport Glob. Sec. LLC v. SB Grp. Holdco, LLC*, 162 A.D.3d 466, 467 (N.Y. App. Div. 2018) (reservation language stated only that parties would find a "mutually agreeable alternative structure" if the trade could not settle in specified form).

agreement in DBSI's preferred case, *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, "constitute[d] the entire agreement between the Parties." 487 F.3d 89, 94–96 (2d Cir. 2007).

Finally, while DBSI accuses the Funds of invoking "industry custom," Opp. 16, the Funds actually argued the Letter is Type II because its brevity is not proportionate to the complexity of the transaction or amount of money at stake. Br. 20 (citing *Worldwide Servs.*, 2015 WL 5671724, at *15). That is consistent with the common-sense notion that a $1.6 billion transaction between sophisticated parties would not be recorded in a mere one-and-a-half page Letter. DBSI cites cases upholding short-form agreements, Opp. 16, but two of them did not condition the transactions on the negotiation of final agreements—unlike here. *Seaport Glob. Sec. LLC*, 162 A.D.3d 466; *Goldman Sachs Lending Partners, LLC v High River Ltd. P'ship*, 943 N.Y.S.2d 791 (N.Y. Sup. Ct. 2011). In the final case, after signing a short-form agreement but before signing a final agreement, the party disclaiming the agreement had tried to sell the claims to a third party, "blatantly" indicating its intent to be bound by the short-form agreement. *See Deephaven Distressed Opportunities Tradings, Ltd. v. 3V Capital Master Fund Ltd.*, 954 N.Y.S.2d 46, 47 (N.Y. App. Div. 2012). Not so here. On the face of the Complaint and the Letter, the parties' agreement is best understood as Type II.

### 2. DBSI Fails To Allege Any Breach Of A Type II Agreement

To show a breach of the duty to negotiate in good faith under a Type II agreement, DBSI must plausibly allege "some 'deliberate misconduct'—arbitrary or capricious action taken out of spite or ill will or to back out of an otherwise binding contractual commitment." *L-7 Designs, Inc. v. Old Navy, LLC*, 964 F. Supp. 2d 299, 308 (S.D.N.Y. 2013) (collecting cases). DBSI alleges no such conduct. Opp. 23–24. At best, it asserts that: (1) the Funds did not include DBSI in the Funds' 2019 mediation with the Trustee, Compl. ¶ 64—even though DBSI abandoned negotiations eight years earlier; (2) the Funds do not consider the Letter to be a fully binding contract, *id.* ¶ 66;

6

and (3) the Funds ceased negotiations with DBSI and settled with the Trustee without involving DBSI, *id.* ¶¶ 69–70.  This is not misconduct and cannot support a claim of breach.

In *Gas Natural, Inc. v. Iberdrola, S.A.*, the court dismissed a complaint asserting "that Defendants acted in bad faith by terminating negotiations after receiving a competing offer" where there was no evidence of dishonesty and no breach of any exclusivity clause.  33 F. Supp. 3d 373, 384–85 (S.D.N.Y. 2014); *accord U.S. Bank Nat'l Ass'n v. Kahn Prop. Owner, LLC*, 118 N.Y.S.3d 369 (N.Y. Sup. Ct. 2019).  That is exactly the case here.  Even crediting DBSI's claim that the intermittent contact between the parties after 2013 comprised "negotiations," Opp. 23, nothing in the Letter prevented the Funds from settling with the Trustee independently.  That was plainly a reasonable business decision, as the Funds could not come to an agreement with DBSI after eight years and no longer needed DBSI's funding to settle.  *See L-7 Designs*, 964 F. Supp. 2d at 307 (no bad faith merely because, in the end, a party refuses to "capitulate to the other side's demands").

### B. Even If The Letter Were Read As A Type I Agreement, DBSI Breached And So Cannot Sue The Funds

#### 1. DBSI Materially Breached Any Type I Agreement

DBSI does not dispute that, because the Letter lacks a merger clause, the Court must look to surrounding circumstances to determine if it was integrated.  Br. 22–23 (citing cases).  DBSI summarily asserts that the Letter contains "all of the essential terms," Opp. 17, but the Letter is expressly "subject to" a separate PSA and omitted multiple material terms.  Br. 17–19.  Accordingly, the Letter is at most only partially integrated, and the Court can look to the draft PSAs—which DBSI incorporates into its Complaint—to determine the scope of the parties' agreement.

The draft PSAs show that DBSI first had to pay the Trustee (to settle the Trustee's lawsuit against the Funds) in order to Allow the Customer Claims.  DBSI resorts to misdirection on this point, citing the Funds' representation in the draft PSAs that the "Customer Claim is Allowed

7

against the Debtor," which had to be "true and correct as of the Funding Date." Opp. 20–21. But DBSI omits the full condition: the claims had to be Allowed "*inclusive of any and all Funding Obligations*." Aug. 18 Draft PSA § 8(i); Aug. 23 Draft PSA § 8(h); Aug. 25 Draft PSA § 8(h) (emphasis added). These "Funding Obligations" *included* "amounts to be paid … on behalf of the Seller to the Trustee in connection with the Settlement Agreement," Br. 15, and *DBSI* had to pay to the Trustee "that portion of the Purchase Price necessary to satisfy the Funding Obligations," *id.* at 14–15.[7] Unsurprisingly, this provision is consistent not only with the rest of the draft PSAs, but also with all parties' description of the deal in 2011, *see, e.g.*, DBSI Counterclaim ¶ 6, and common sense. Under the proposed transaction, as all parties understood, Allowance of the Customer Claims depended on DBSI's payment to the Trustee. DBSI never made that payment. If the Letter were a Type I Agreement, it is clear from DBSI's own allegations that it breached the agreement, excusing the Funds' further performance. Br. 23–24.[8]

      DBSI asserts the Court cannot consider unexecuted PSAs in determining the meaning of partially integrated contracts. Opp. 17–18. In fact, courts may consider "surrounding circumstances," *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995), *including* "evidence of the parties' negotiations," *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir. 1999). That includes the draft PSAs. DBSI's own authority (Opp. 19) confirms the Court "may consider documents," like the draft PSAs, "that are referenced in the complaint" or "that the plaintiff relied on in bringing suit." *DKR Capital, Inc. v. AIG Int'l W. Broadway Fund, Ltd.*, 2003 WL 22283836,

---

[7] DBSI acknowledges the draft PSAs required that the settlement agreements be approved by bankruptcy courts before the Funding Date. Opp. 21. That is consistent with DBSI's obligation under the draft PSAs to pay the amount necessary to settle with the Trustee.

[8] Even crediting DBSI's assertion that the Funds are raising an "affirmative defense," Opp. 17, the Court can dismiss where, as here, "the facts necessary to establish the defense are evident on the face of the complaint." *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019).

8

at *1 (S.D.N.Y. Oct. 2, 2003).

DBSI further asserts the Court cannot consider the draft PSAs because they "contradict" the Letter, Opp. 18, but it fails to show any contradiction. DBSI notes the draft PSAs required DBSI to fund the settlement, but acknowledges the Letter was silent on this point. *Id.* DBSI also notes the Letter refers to a Trade Date and the draft PSAs to an Effective Date, *id.* at 18–19, but the former set a date of *agreement* and the latter a date of *transfer* that the Letter omitted. *E.g.*, Aug. 23 Draft PSA § 3(a). The draft PSAs thus clarify and add to the Letter, but do not contradict it. DBSI's arguments here simply underscore that the Letter lacked material terms.[9]

Finally, DBSI contends that it did not incorporate the draft PSAs into its Complaint and mentions them only "in passing." Opp. 18. In fact, DBSI discussed them in detail and relied on them to allege the Letter contains a condition precedent. Compl. ¶¶ 19, 20 & n.2, 22. It cannot now wish away the parts of those documents it does not like. As DBSI's cited case confirms, documents "explicitly refer[red] to and relie[d] upon" are incorporated into the Complaint. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (holding other documents "neither expressly cited in the complaint nor integral to the claims raised" could not be considered on a motion to dismiss).

2. **DBSI Failed To Perform Within A Reasonable Time**

DBSI does not dispute that, if a contract does not specify a time for performance, "the law implies a reasonable time." Br. 13 (quoting *Savasta v. 470 Newport Assocs.*, 623 N.E.2d 1171, 1172 (N.Y. 1993)). DBSI does not argue the Letter specifies a time; instead, it asserts the Court cannot resolve what is "reasonable" on a motion to dismiss. Opp. 21–22. Not so: New York courts dismiss claims after years-long delays, *e.g.*, *DiBartolo v. Battery Place Assocs.*, 84 A.D.3d

---

[9] DBSI's throwaway suggestion that the PSAs "introduc[e] ambiguity," Opp. 19, is wrong. DBSI identifies no "ambiguity" in the PSAs, and neither party argues the PSAs are ambiguous.

9

474, 475 (N.Y. App. Div. 2011) (6 years), and DBSI failed to perform for 8 years and 10 months.

The draft PSAs show that DBSI was to perform shortly after closing: As DBSI concedes, the draft PSAs provided that time was of the essence and gave DBSI the option to cancel the deal if not closed within seven months. Opp. 22–23 & n.8. While DBSI suggests its obligations began only after the Adversary Proceeding was resolved, *id.* at 21–22, this presumes the Letter conditioned DBSI's performance on the Customer Claims' Allowance. It did not. *See* Point I, *supra*. DBSI's failure to perform for nearly nine years breached any Type I agreement.

### III. DBSI DOES NOT MEANINGFULLY DEFEND ITS CLAIM FOR A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

DBSI still has not explained how an insolvent entity in a foreign liquidation proceeding acts in bad faith when it seeks domestic recognition of that foreign liquidation. DBSI asserts the Funds' Chapter 15 filing was an effort "to block DBSI from enforcing its rights," Opp. 24, but alleges no facts and cites no relevant cases in support. Nor does DBSI deny that, in the joint proposed order submitted to the bankruptcy court, DBSI recognized that the Funds' petition complied with all statutory requirements and agreed that the bankruptcy court should recognize the foreign proceeding. Selendy Decl. Ex. 12 ¶ 1(a)–(f). DBSI now argues that its claim is not subject to preclusion because there has been no final judgment. Opp. 25. But the Funds argue for *estoppel*, not preclusion, Br. 25, because the bankruptcy court "adopted" DBSI's acknowledgement of the propriety of the petition when it entered the proposed order, *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010), and the Funds relied on that admission when they agreed DBSI could sue in this Court, *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). Because DBSI's claim is estopped and legally insufficient, it should be dismissed.

### CONCLUSION

Defendants respectfully request the Court dismiss Plaintiff's Complaint with prejudice.

10

| | | |
|---|---|---|
| Dated: | New York, NY<br>July 15, 2020 | Respectfully submitted,<br><br>SELENDY & GAY PLLC<br><br>By:     /s/        *Philippe Z. Selendy* <br>Phillipe Z. Selendy<br>Caitlin Halligan<br>Andrew R. Dunlap<br>Lena Konanova<br>Oscar Shine<br>Ronald J. Krock<br>SELENDY & GAY PLLC<br>1290 Avenue of the Americas<br>New York, NY  10104<br>Tel: 212-390-9000<br>pselendy@selendygay.com<br>challigan@selendygay.com<br>adunlap@selendygay.com<br>lkonanova@selendygay.com<br>oshine@selendygay.com<br>rkrock@selendygay.com<br><br>*Attorneys for Defendants Kingate Global Ltd. and Kingate Euro Ltd.* |