**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DEUTSCHE BANK SECURITIES INC.,

    *Plaintiff*,

v.

KINGATE GLOBAL FUND LTD. and
KINGATE EURO FUND LTD.,

    *Defendants*.

Case No. 19-cv-10823

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF DEUTSCHE BANK SECURITIES INC.'S MOTION TO COMPEL THE
## <u>IDENTIFICATION OF BVI COURT FILINGS</u>

Date:  November 29, 2021

Glenn M. Kurtz
Andrew W. Hammond
Jacqueline L. Chung
Timothy L. Wilson, Jr. (admitted *pro hac vice*)
**WHITE & CASE**
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200

*Counsel for Deutsche Bank Securities Inc.*

AMERICAS 109989532

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL BACKGROUND..........................................................................................3

ARGUMENT ....................................................................................................................6

I.   THE FUNDS SHOULD BE REQUIRED TO IDENTIFY ALL WITHHELD BVI
     COURT FILINGS................................................................................................6

     A.   The Funds Must Produce A Privilege Log .......................................................7

     B.   The Funds Must Identify Responsive Non-Privileged Documents ..................10

II.  THE COURT SHOULD NOT DEFER TO THE SEALING ORDERS ENTERED
     BY THE BVI COURT........................................................................................11

     A.   The Funds Have Not Met Their Burden To Show That The Sealing Orders
          Should Govern Here ........................................................................................11

     B.   The Funds Can Request That The BVI Court Modify The Seal For Purposes
          Of This Action ................................................................................................13

     C.   Principles Of International Comity Weigh In Favor Of Requiring The Funds
          To Comply With U.S. Discovery Requirements ..............................................15

          1.   Importance To The Litigation..............................................................16

          2.   Specificity Of The Request .................................................................16

          3.   Location Of Information And Parties ....................................................17

          4.   Balance Of National Interests ..............................................................17

          5.   Availability Of Alternative Means Of Securing The Information........20

          6.   Hardship To The Party.........................................................................21

          7.   Good Faith ...........................................................................................22

III. THE FUNDS SHOULD BE REQUIRED TO PRODUCE NON-PRIVILEGED
     DOCUMENTS AND LOG PRIVILEGED EXTERNAL COMMUNICATIONS IN
     THE POSSESSION OF MOURANT ........................................................................24

CONCLUSION...............................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
    297 F.R.D. 55 (S.D.N.Y. 2013) ........................................................................10

*Bodner v. Paribas*,
    202 F.R.D. 370 (E.D.N.Y. 2000) ....................................................................20

*Breon v. Coca-Cola Bottling Co.*,
    232 F.R.D. 49 (D. Conn. 2005)...........................................................................7

*Davis v. City of New York*,
    2011 U.S. Dist. LEXIS 48395 (S.D.N.Y. May 5, 2011) .....................................7

*Export-Import Bank of the United States v. Asia Pulp & Paper Co.*,
    2009 U.S. Dist. LEXIS 33096 (S.D.N.Y. Apr. 17, 2009)...........................11, 19, 23

*Gucci Am., Inc. v. Curveal Fashion*,
    2010 U.S. Dist. LEXIS 20834 (S.D.N.Y. Mar. 8, 2010) ...................................17

*Gucci Am., Inc. v. Guess?, Inc.*,
    271 F.R.D. 58 (S.D.N.Y. 2010) ..........................................................................8

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*,
    240 F.R.D. 44 (D. Conn. 2007)...........................................................................8

*In re Application of Financialright GmbH*,
    2017 U.S. Dist. LEXIS 107778 (S.D.N.Y. June 23, 2017)...................................9

*In re Societe National Industrielle Aerospatiale*,
    782 F. 2d 120 (8th Cir. 1986) ...........................................................................23

*In re Vivendi Universal, S.A. Sec. Litig.*,
    2006 U.S. Dist. LEXIS 85211 (S.D.N.Y. Nov. 13, 2006) .................................18

*JDS Therapeutics, LLC v. CVS Pharmacy, Inc.*,
    2015 U.S. Dist. LEXIS 145634 (S.D.N.Y. Oct. 22, 2015) ..................................8

*Laydon v. Mizuho Bank, Ltd.*,
    183 F. Supp. 3d 409 (S.D.N.Y. 2016).................................................9, 15, 18, 21

*Lopez v. City of New York*,
    2021 U.S. Dist. LEXIS 123469 (S.D.N.Y. July 1, 2021) ..............................12, 13

*Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*,
    58 F.R.D. 348 (S.D.N.Y. 1973) .................................................................12

*Milliken & Co. v. Bank of China*,
    758 F. Supp. 2d 238 (S.D.N.Y. 2010) ................................................17, 21

*NML Capital v. Republic of Argentina*,
    2013 U.S. Dist. LEXIS 17572 (S.D.N.Y. Feb. 8, 2013) ..................17, 19, 21

*Redeemer Comm. of Highland Credit Strategies Funds v. Highland Cap. Mgmt., L.P.*,
    182 F. Supp. 3d 128 (S.D.N.Y. 2016) .......................................................18

*Reino de Espana v. Am. Bureau of Shipping*,
    2005 U.S. Dist. LEXIS 15685 (S.D.N.Y. Aug. 1 2005) .............................18

*Richmark Corp. v. Timber Falling Consultants*,
    959 F. 2d 1468 (9th Cir. 1992) ..................................................................22

*S.E.C. v. Gibraltar Glob. Secs., Inc.*,
    2015 U.S. Dist. LEXIS 43773 (S.D.N.Y. Apr. 1, 2015) .............................12

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. Iowa*,
    482 U.S. 522 (1987) ...................................................................................15

*Tansey v. Cochlear Ltd.*,
    2014 U.S. Dist. LEXIS 132021 (E.D.N.Y. Sept. 18, 2014) ........................17

*United States v. Portrait of Wally*,
    663 F. Supp. 2d 232 (S.D.N.Y. 2009) .......................................................11

*Weiss v. Natl'l Westminster Bank, PLC*,
    242 F.R.D. 33 (E.D.N.Y. 2007) ...................................................................8

*Wultz v. Bank of China*,
    942 F. Supp. 2d 452 (S.D.N.Y. 2013) .......................................................15

*Wultz v. Bank of China Ltd*,
    298 F.R.D. 91 (S.D.N.Y. 2014) ..........................................................12, 13

## STATUTES AND RULES

Fed. R. Civ. P. 26(b)(1)..............................................................................18

Fed. R. Civ. P. 26(b)(5)(A) ..........................................................................7

Local Civil Rule 26.2 ...................................................................................7

**MISCELLANEOUS**

6 Moore's Federal Practice – Civil § 26.90 ...................................................................................7

Restatement (Third) of Foreign Relations Law § 442(2)(a) ..........................................................13

Plaintiff Deutsche Bank Securities Inc. ("DBSI") respectfully submits this brief in support of its motion to compel Defendants Kingate Global Fund Ltd. and Kingate Euro Fund Ltd. (the "Funds" or "Kingate") to produce a log documenting all filings made in the Funds' liquidation proceedings in the courts of the British Virgin Islands ("BVI Court") that contain information relevant and responsive to DBSI's document requests, which the Funds are withholding from disclosure, and, to the extent that such information is being withheld on the basis of privilege, a log identifying the basis for that privilege.[1]

## PRELIMINARY STATEMENT

From the outset of discovery, DBSI has requested the Funds to identify the documents relevant to the current dispute between DBSI and Kingate that were filed in the BVI Court overseeing the Funds' liquidation (the "BVI Court Filings") so that DBSI could evaluate the nature of the information that the Funds are refusing to produce. The Funds refuse to do so, claiming that all such documents are privileged and subject to sealing orders entered by the BVI Court, preventing them from even identifying the relevant and responsive material they are withholding from production (the "Sealing Orders"). DBSI seeks an order from this Court directing the Funds to (i) identify the relevant and responsive information filed with the BVI Court and (ii) identify on a privilege log any such information that they are withholding on the grounds of privilege, as required by the Federal Rules of Civil Procedure and the local rules of this District.

DBSI has commenced this action against the Funds to enforce a "firm, irrevocable and binding" trade confirmation agreement requiring the Funds to sell to DBSI its Allowed Claims against the Madoff Estate (the "Agreement"). The Funds entered into a settlement with the Madoff

---

[1] The term "Claims" is defined as set forth in the Agreement, which is attached to DBSI's Complaint. ECF No. 7-01. Capitalized terms in this brief that are not otherwise defined use the same definitions as those set forth in DBSI's Complaint. ECF No. 7.

Trustee in August 2019 and came into possession of the Allowed Claims that it was required to sell to DBSI. But the Funds now claim that they are not required to sell the Allowed Claims to DBSI because the Agreement is not binding.

Throughout the Funds' liquidation proceedings, the Funds routinely made filings to the BVI Court to seek "sanction" to engage in certain conduct in which they likely made representations about the Allowed Claims, the enforceability of the Agreement, the settlement with the Madoff Trustee, and the pending litigation relating to the Agreement, including the action that the Funds commenced against DBSI to *enforce* the Agreement in 2011 and the Chapter 15 proceedings that the Funds commenced in 2019 to prevent DBSI from enforcing its rights under the Agreement once the claims became Allowed. The representations made by the Funds to the BVI Court on these issues are clearly relevant to determining whether the Funds have a legitimate basis to claim, among other things, that the Agreement is not binding.

The Funds claim, however, that the filings cannot be disclosed under the Sealing Orders because they were "submitted to the BVI Court under seal, are privileged, or are attorney work-product." The Funds have refused DBSI's requests to identify each of the BVI Court Filings and to explain the basis upon which each document has been withheld on the grounds that they are not permitted to disclose such information under the Sealing Orders. The Funds have also rejected DBSI's repeated requests to produce the Sealing Orders themselves, thus making it impossible for DBSI and the Court to understand the parameters of the orders.

As the Funds do not dispute that they are withholding relevant and responsive information from production, the Funds should be compelled to produce a log identifying relevant and responsive BVI Court Filings that the Funds are refusing to produce. The Federal Rules of Civil Procedure and the Local Rules of this District require parties withholding documents as privileged

to provide a privilege log. Moreover, given that the Funds have not distinguished between the documents withheld on the basis of privilege and otherwise non-privileged documents withheld solely on the basis of the Sealing Orders, the Funds should be required to identify *all* relevant and responsive documents that they are withholding and the legal basis upon which they have been withheld, so that DBSI can properly evaluate whether there is a basis to challenge the Funds' position. While the Funds ask the Court to defer to the Sealing Orders, principles of international comity weigh heavily in favor of requiring the Funds, who have been repeated participants in U.S. litigation with respect to the Allowed Claims and the Agreement, to comply with U.S. discovery obligations. Notably, the Funds have made no effort to seek to modify the Sealing Orders in the BVI Court (as they are permitted to do), in order to allow them to comply with U.S. discovery requirements.

Accordingly, the Funds should be required to identify on a log all of the BVI Court Filings, including those they are withholding as privileged and those they are withholding on the basis of the Sealing Orders, but which they do not claim are privileged. Finally, the Funds' BVI counsel, Mourant Ozannes ("Mourant") should also be required to comply with the Court's orders by producing relevant non-privileged documents and communications and logging any external communications that are purportedly subject to privilege.

## **FACTUAL BACKGROUND**

On June 4, 2021, DBSI served requests for production on the Funds. Declaration of Andrew W. Hammond in Support of DBSI's Motion to Compel the Identification of BVI Court Filings ("Hammond Decl.") Ex. 1. Request 4 in these discovery requests sought "[a]ll filings the Kingate Funds have made with the BVI Court regarding the Claims," including "(a) All filings relating to the Claims; (b) All filings relating to the Kingate Funds' decision to sell the Claims; (c) All filings relating to the Agreement; (d) All filings relating to the commencement of the 2011

Action; (e) All filings relating to the dismissal of the 2011 Action; (f) All filings relating to the Kingate Funds' efforts to enter into a final settlement agreement with the Trustee that was dependent only on funding from DBSI; (g) All filings relating to the Chapter 15 Petition; (h) All Documents and Communications reflecting the amounts of any distributions received by the Kingate Funds from BLMIS on account of the Claims; and (i) All Documents and Communications reflecting amounts expected to be recovered on account of the Claims." *Id.* at 12-13.

In their responses and objections to the requests for production, the Funds stated that they would not produce documents or communications in response to Request 4, objecting on the basis that the documents and communications "are protected from disclosure because they were submitted to the BVI Court under seal, are privileged, or are attorney work-product." Hammond Decl. Ex. 2, at 7.

DBSI and the Funds exchanged correspondence regarding the Funds' objection to Request 4 over the ensuing months. In a letter to the Funds on July 30, 2021, DBSI requested additional information from the Funds regarding their basis for withholding the BVI Court Filings and further stated that the Funds could not unilaterally withhold the filings without first identifying them on a privilege log to give DBSI an opportunity to challenge the privilege assertions. Hammond Decl. Ex. 3. Without waiving its objections, DBSI requested "information sufficient to identify all filings made to the BVI Court relating to the issues set forth in Request No. 4, including the date of each filing and a description of the contents of each filing." *Id.* at 3.

On September 7, 2021, the Funds responded, objecting to producing information sufficient to identify the BVI Court Filings on the basis that (1) they were not required to create a summary of all documents, (2) a review of over 200 documents would be "unduly burdensome," and (3) the

filings "would not be discoverable . . . in U.S. litigation" because the "BVI Court issued multiple sealing orders forbidding the Joint Liquidators from disclosing any materials filed under seal." Hammond Decl. Ex. 4, at 2-3. The Funds did not contend that providing a privilege log would run afoul of any Sealing Orders in place in the BVI Court. Nor did the Funds suggest that every single document that was filed under seal in the BVI Court was responsive to DBSI's request or privileged.

On October 19, 2021, in response to another letter from DBSI on the issue, *see* Hammond Decl. Ex. 5, the Funds reiterated their position that BVI Court Filings were "likely" privileged and subject to Sealing Orders. Hammond Decl. Ex. 6, at 1. The Funds also asserted that it would be "very time consuming and expensive" to review and log the approximately 200 filings at issue. *Id.* at 2. The Funds further argued that "[i]t would be unduly burdensome for the Funds to gather and review those documents just to log all relevant material because it is privileged." *Id.* Again, the Funds' letter did not indicate that it would violate the BVI Court's Sealing Orders to produce a privilege log. Further, in response to DBSI's request that the Funds produce the Sealing Orders, *see* Hammond Decl. Ex. 5, the Funds explained for the first time that the Sealing Orders themselves also could not be disclosed to DBSI. Hammond Decl. Ex. 6, at 2.

DBSI filed a letter motion with the Court on October 29, 2021 requesting that the Court compel the production of a privilege log with respect to the BVI Court Filings, and reserving the right to seek the disclosure of the documents themselves. ECF No. 53. The Funds filed a letter opposing production of the BVI Court Filings and any privilege log relating to them on November 3, 2021, this time supplementing their position with the 34-page affidavit of David Chivers, QC. ECF No. 54 Ex. 1 (the "Chivers Aff."). While the Funds had previously represented that the BVI Court Filings "likely are protected by attorney-client privilege," they now claimed for the first time

that "the material DBSI seeks is almost certainly all privileged." Hammond Decl. Ex. 6; ECF No. 54 at 2. Again, they provided no basis as to why it would be improper under BVI law to comply with the Federal and Local Rules requiring the production of a privilege log.

At a November 5, 2021, hearing on DBSI's letter motion, the Court noted that production of a privilege log regarding the BVI Court Filings was "a reasonable request": "They're not asking for the documents, they're asking for a log. To the extent that you are not arguing that these documents are not relevant, in the ordinary course, you would be required to turn over such a log." Hammond Decl. Ex. 7, at 27:25-28:3. Counsel for the Funds insisted, however, that even the production of a privilege log would violate the Sealing Orders. *Id.* at 24:6-16. Counsel for the Funds further stated that DBSI should be required to petition the BVI Court to "unseal anything that it thinks should be unsealed," but further stated that the Funds would oppose such an application. *Id.* at 31:15-19, 32:4-14. In response to the suggestion that DBSI should make the application, the Court correctly noted:

> THE COURT: How would they know? It appears to be a black hole. Not only can you not tell them what was filed nor can you not give them access to what was filed, you can't even tell them what was filed."

*Id.* at 32:15-18. The Court further instructed DBSI to file a motion to compel to the extent that it was seeking disclosure of a privilege log regarding the BVI Court Filings.

## <u>ARGUMENT</u>

## I.   THE FUNDS SHOULD BE REQUIRED TO IDENTIFY ALL WITHHELD BVI COURT FILINGS

Because the Funds have failed to provide any information regarding the relevant materials that they have filed with the BVI Court that they are withholding from production, it is unclear what documents the Funds have withheld, and for what reason. Accordingly, the Funds should be required to identify all BVI Court Filings they are withholding and to explain the legal basis behind

their decision to withhold each document (e.g., on the basis of the Sealing Orders and/or privilege).

## A. The Funds Must Produce A Privilege Log

The Funds are required to identify all documents that they have withheld as privileged on a privilege log. Federal Rule of Civil Procedure 26 provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).[2] "This language requires the party asserting a privilege, at a minimum, to claim the privilege and briefly describe the information withheld. A blanket assertion of privilege is insufficient." 6 Moore's Federal Practice – Civil § 26.90. "Although the party asserting the privilege is not required to reveal privileged information in complying with the Rule, enough information must be supplied so that the court can determine whether the asserted privilege is applicable." *Id.*

A privilege log is necessary because DBSI cannot properly evaluate whether it has a basis to challenge the Funds' assertion of privilege without a privilege log. *See Davis v. City of New York*, 2011 U.S. Dist. LEXIS 48395, at *14 (S.D.N.Y. May 5, 2011) ("[T]he purpose of a privilege log is to enable the opposing party and the Court to test the asserted privilege."). A privilege log is "not simply a technicality, it is [an] essential tool which allows the parties and the court to make an intelligent decision as to whether a privilege or immunity exists." *Breon v. Coca-Cola Bottling*

---

[2] Similarly, Local Civil Rule 26.2 provides that "[w]here a claim of privilege is asserted in objecting to any means of discovery or disclosure . . . and an answer is not provided on the basis of such assertion," "[t]he following information shall be provided": "(i) the type of document . . . (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other." Local Rule 26.2.

*Co.*, 232 F.R.D. 49, 55 (D. Conn. 2005).  Indeed, "[a]n invocation of a claim of privilege without producing an accompanying privilege log can be an unfair discovery tactic that increases delay in the resolution of lawsuits, fosters excessive motion practice, increases the costs of litigation, and greatly increases the work of the court." *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D. Conn. 2007).

The Funds cannot avoid their obligation to provide a log simply because the information identified on it may be detrimental to their position.  On this point, *JDS Therapeutics, LLC v. CVS Pharmacy, Inc.*, 2015 U.S. Dist. LEXIS 145634 (S.D.N.Y. Oct. 22, 2015), is instructive.  There, plaintiffs refused to produce a privilege log "on the basis that doing so 'would disclose counsel's pre-filing investigation, mental processes, and work-product, and would identify potential non-testifying expert consultants in violation of Rule 26'" and argued that "the privilege log itself would be privileged." *Id.* at *5.  The court ordered plaintiffs to produce a privilege log, finding that the argument "borders on the frivolous." *Id.*  The court noted that "Rule 26(b)(5) does not end with the caveat, 'if the party feels like it.'  It is in no way optional." *Id.*

Moreover, the Funds are required to log privileged documents even when they claim that foreign law provides the basis for privilege.  *See Weiss v. Natl'l Westminster Bank, PLC*, 242 F.R.D. 33, 57 (E.D.N.Y. 2007) (finding that, to the extent defendant was withholding documents and responses based on British statutory authority, defendant was required to "provide a privilege log identifying those documents and responses and the basis for withholding them").  Indeed, a log is essential here because DBSI must have the opportunity to verify and challenge the Funds' assertion that BVI privilege laws govern the withheld filings.  To the extent that any of the withheld documents concern U.S. litigation, it is possible that U.S. privilege laws govern under the "touch base" standard applied in this jurisdiction.  *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65

(S.D.N.Y. 2010) (stating that "communications relating to legal proceedings in the United States, or that reflect the provision of advice regarding American law, 'touch base' with the United States and, therefore, are governed by American law, even though the communication may involve foreign attorneys or a foreign proceeding"); *In re Application of Financialright GmbH*, 2017 U.S. Dist. LEXIS 107778, at *8 (S.D.N.Y. June 23, 2017) ("Communications concerning legal proceedings in the United States or advice regarding United States law are typically governed by United States privilege law, while communications relating to foreign legal proceedings or foreign law are generally governed by foreign privilege law.") (internal citations omitted). Without a log identifying each document and the basis for the privilege invoked by the Funds, neither DBSI nor the Court can evaluate which privilege laws should apply (if any).

The Funds are also not entitled to withhold a privilege log simply because of the purportedly unique position that the BVI Court occupies in liquidation proceedings, in which a judge serves as an "adviser and trustee" from whom the liquidator may seek directions and receive clarity on various issues. ECF No. 54 at 2; Chivers Aff. ¶ 48. It is a routine practice for parties to include in their privilege logs documents and communications involving their outside counsel, their advisers, and their trustees. While the attorney-client privilege or work product doctrine may protect against the disclosure of privileged communications with such parties, the party asserting privilege must still provide sufficient information regarding these privileged communications to satisfy the requirements of Rule 26. The Funds are not relieved of this requirement.

Furthermore, the Funds' concerns about confidentiality also do not provide a basis to dispense with the privilege log requirement. The Funds would be required only to disclose their privilege log to DBSI, and the log can be produced subject to the parties' Confidentiality Agreement and Protective Order. ECF No. 46; *see Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d

409, 425 (S.D.N.Y. 2016) (a foreign court's "interest in protecting the privacy of its citizens is mitigated by the protective order in place in this case, which permits the [defendants] to designate disclosed materials as 'Highly Confidential'").[3]

### B. The Funds Must Identify Responsive Non-Privileged Documents

The Funds should also be required to identify all responsive and non-privileged BVI Court Filings that they are withholding on the basis of the Sealing Orders, if any. Unless the Funds identify these documents, DBSI will not know which documents the Funds are withholding solely on the basis of the Sealing Orders and which documents the Funds are also withholding on the basis of privilege. To the extent that there are responsive BVI Court Filings that are not privileged, DBSI should be entitled to know what these documents are so that it can assess whether there would be a basis to compel their production.

The Funds have not established that the Sealing Orders prevent them from logging sealed but non-privileged documents. The Funds' declarant states only that "a sealing order *might* prevent a liquidator from disclosing non-privileged materials on the court file." Chivers Aff. ¶ 64 (emphasis added). The Funds' declarant further acknowledges that there are some categories of non-privileged documents that would not be subject to the seal. *See* Chivers Aff. ¶ 80 (noting that certain pre-existing documents included in sealed file would not be subject to seal and the liquidator is free to disclose them). Regarding sealed and non-privileged documents that the liquidator must seek court permission to disclose, the Funds' declarant acknowledges that the BVI

---

[3] To be clear, although the Funds claim that they "have provided information akin to that on a categorical log," ECF No. 54 n.4, DBSI has not agreed to a categorical privilege log for the BVI Court Filings. (Nov. 5, 2021 Hr'g Tr. at 27:20-22 (counsel for DBSI explaining that "we've been asking to understand what was filed with the B.V.I. court and we would submit that we would want more than a categorical log here")). Nor have the Funds identified where they have provided such information or shown how it is sufficient to satisfy the requirements for a categorical log. *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 297 F.R.D. 55, 59 (S.D.N.Y. 2013) (a categorical log is also governed by Rule 26 and is "adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege.").

Court will weigh confidentiality interests against the "the public interest that all relevant material be placed before a court in adversarial proceedings so as to ensure their fair disposal." Chivers Aff. ¶ 80. Thus, there is no categorical bar to the disclosure of these documents. The same principles of fairness animating the BVI Court's determinations should also apply here to permit DBSI, at a minimum, to understand which non-privileged documents the Funds are withholding on the basis of the Sealing Orders.

## II. THE COURT SHOULD NOT DEFER TO THE SEALING ORDERS ENTERED BY THE BVI COURT

Even if the Sealing Orders were to preclude the production of a log under BVI law, the Court is not required to defer to the decision of a foreign court where principles of international comity weigh in favor of the application of U.S. law. "Unlike an order from another U.S. Court, this Court has no legal obligation to give effect or deference to the orders or holdings of a court of a foreign country, absent a specific treaty or legislative rule." *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 2009 U.S. Dist. LEXIS 33096, at *7 (S.D.N.Y. Apr. 17, 2009); *see also United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 248-49 (S.D.N.Y. 2009) ("International comity requires recognition of foreign actions, decrees, and proceedings" only where those foreign orders or proceedings "do not conflict with the interests or policies of the United States") (internal quotation marks and citations omitted). Here, there is no reason why the Court should allow undisclosed Sealing Orders to impede the discovery process where (1) the Funds have not provided the Court with sufficient information to assess the basis for the continued need for confidentiality; (2) the Funds are permitted to seek modification of the Sealing Orders in the BVI Court; and (3) the comity factors weigh in favor of enforcing U.S. discovery obligations.

### A. The Funds Have Not Met Their Burden To Show That The Sealing Orders Should Govern Here

The Funds bear the burden of demonstrating that the Sealing Orders would preclude the

production of a log identifying the relevant information filed with the BVI Court, including a log identifying the documents that they claim to be privileged. *See S.E.C. v. Gibraltar Glob. Secs., Inc.*, 2015 U.S. Dist. LEXIS 43773, at *4 (S.D.N.Y. Apr. 1, 2015) ("[W]here the alleged obstacle to production is foreign law, the burden of proving what that law is and demonstrating why it impedes production falls on the party resisting discovery."); *Wultz v. Bank of China Ltd*, 298 F.R.D. 91, 96 (S.D.N.Y. 2014) ("[T]he party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law.") (citations omitted).

The Funds refuse to disclose the Sealing Orders that purportedly prohibit them from identifying the BVI Court Filings. The Court should not curtail DBSI's right to obtain relevant discovery on the basis of these undisclosed foreign sealing orders. To do so would undermine the principles of broad discovery that underlie U.S. litigation. *Lopez v. City of New York*, 2021 U.S. Dist. LEXIS 123469, at *2 (S.D.N.Y. July 1, 2021) ("Liberal discovery is necessary because '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947))); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352-53 (S.D.N.Y. 1973) ("[T]he scope of discovery under the Federal Rules of Civil Procedure is to be liberally construed so as to provide both parties with information essential to proper litigation on all the facts.") (internal citations omitted).

The Funds have not met their burden to demonstrate why the Sealing Orders should shield them from discovery obligations here. The Funds have not explained the basis for their assertion that the Sealing Orders would preclude the Funds from producing a list of the filings, separate and apart from the filings themselves. As noted by DBSI's declarant, Mark Phillips QC, "the question as to whether the seal continues to be necessary in the interests of justice in respect of specific

applications, documents, or simply a list identifying documents has very likely not been assessed."
*See* Affidavit of Mark Phillips QC ("Phillips Aff.") at ¶ 29. The Funds have also not addressed
the BVI court procedures that would allow them to seek the modification or lifting of the Sealing
Orders. *See infra* at p. 13-15. Further, the Funds do not explain why the concerns that they or the
BVI Court may have with respect to confidentiality would not be addressed by the protective order
entered in this action, which would limit the disclosure of the filings (or information relating to
them) to DBSI and the Court only.[4] In short, the Funds have failed to provide the Court with
sufficient information to assess the reasons for maintaining the strict confidentiality that they seek
with respect to the filings. *See Wultz*, 298 F.R.D. at 96 (stating that a party resisting discovery on
comity grounds must, among other things, identify "the provisions of the foreign law, the basis for
its relevance, and the application of the foreign law to the facts of the case") (citations omitted).

### B. The Funds Can Request That The BVI Court Modify The Seal For Purposes Of This Action

Even if the Sealing Orders operated as the Funds claim, the Funds could move to lift the
seal to provide a list identifying the filings that are relevant and responsive to DBSI's document
requests. Indeed, that is something that this Court should require. *See* Restatement (Third) of
Foreign Relations Law §442(2)(a) ("[A] court or agency in the United States may require the
person to whom the order is directed to make a good faith effort to secure permission from the
foreign authority to make the information available").

As acknowledged by the Funds' declarant, David Chivers QC, the Funds have the ability

---

[4] Although a sealing order may be entered to maintain confidentiality "in the interests of justice," *see* Chivers Aff. ¶ 69, it is difficult to see how justice would be served here by allowing information to remain sealed simply because its disclosure has the potential to harm the Funds in adversarial proceedings such as this one. To the extent that the Sealing Orders have been entered for this purpose, the Court should not defer to them, as that would contravene the principles of transparency and fair play that underlie U.S. litigation. *See, e.g., Lopez v. City of New York*, 2021 U.S. Dist. LEXIS 123469, at *2 (S.D.N.Y. July 1, 2021) (noting that "[l]iberal discovery is necessary because '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation'") (citation omitted).

to seek to modify what they claim to be a blanket order that applies not only to privileged information but also merely to confidential information. *See* Chivers Aff. ¶ 9(1) (liquidator can seek permission from the court to authorize disclosure), ¶ 81 ("[T]he BVI Court has discretion whether to make an order for disclosure and inspection in respect of documents held by a party."). DBSI's declarant, Mark Phillips QC, confirms that "as an officer of the BVI Court, the liquidator can at any time make an application to the BVI Court pursuant to section 186(5) of the BVI Insolvency Act 2003 (the "BVI Insolvency Act") for the court file to be unsealed in relation to certain documents" and that "such an application could be made by a BVI liquidator for the purposes of complying with a discovery order in the United States." Phillips Aff. at ¶ 31.

The Funds are therefore not in the position of "having to choose between defying an order from your Honor, which we don't want to do, and defying an existing order from the B.V.I. Court." *See* Hammond Decl. Ex. 7 at 28:8-10. In fact, if the Funds believed that the relevant material in the BVI was helpful to their case, they would have already made such an application. Rather than seek such relief, the Funds seek to shelter relevant material behind undisclosed sealing orders, while refusing to disclose the nature of the information they are seeking to protect.

Even though this burden rests on the Funds, the Funds claim that it is DBSI that should be making an application to the BVI Court. *See id.* at 31:16-19 (arguing that DBSI should "go down to the B.V.I. court [and] it can file an application there and ask the judge to unseal anything that it thinks should be unsealed"). But clearly the Funds—and not DBSI—are in the best position to obtain permission from the BVI Court given that (1) the Sealing Orders have been entered for the benefit of the Funds' liquidators; (2) the Funds are already present before the BVI Court and DBSI is not, (3) the Funds know the content of the documents that they are withholding from production, including whether they intend to assert a claim of privilege or merely confidentiality with respect

to such materials, and (4) the Funds have affirmatively sought relief in this forum and chose to enter into a contract governed by New York law, so it is not unfair to require them to comply with U.S. discovery obligations.

### C. Principles Of International Comity Weigh In Favor Of Requiring The Funds To Comply With U.S. Discovery Requirements

To the extent that there is a conflict between the Sealing Orders and the Funds' obligation to comply with U.S. discovery requirements, a comity analysis would weigh in favor of requiring the Funds to produce a log of the information responsive to DBSI's discovery requests.   With respect to comity, the Second Circuit employs the test set forth in the Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c), which requires courts to consider "(1) the importance to the investigation or litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located." *Wultz v. Bank of China*, 942 F. Supp. 2d 452, 460 (S.D.N.Y. 2013). Courts may also consider "(6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery." *Id*; *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. Iowa*, 482 U.S. 522, 544 n.28 (1987).[5]   These factors weigh in favor of compelling the requested discovery here.

---

[5] Additionally, the court may also consider "whether the person resisting discovery is a party to the litigation." *Laydon*, 183 F. Supp. 3d at 420 (citing *Tansey v. Cochlear Ltd.*, 2014 U.S. Dist. LEXIS 132021, at *7 (E.D.N.Y. Sept. 18, 2014)).   Given that the Funds are defendants in this action and not a third party, this factor would weigh in favor of requiring the Funds, at the very least, to log all documents that it claims are subject to the Sealing Orders, including documents that they are also withholding on the basis of privilege.

### 1. Importance To The Litigation

The Funds should be required to identify the BVI Court Filings (and log any privileged materials) because these documents address issues that are directly relevant to DBSI's claims. The Funds have acknowledged that the filings generally include "applications by the liquidators for directions (including directions relating to the prosecution and settlement of court proceedings)" and "reports to the court, either in the context of such applications or otherwise" and do not dispute that the materials filed with the BVI Court contain information that is directly relevant to this dispute. Hammond Decl. Ex. 6, at 2. DBSI believes that the Funds made representations in filings, applications or reports to the BVI Court concerning the enforceability of the Agreement, the reasons for commencing the 2011 Litigation, the reasons for agreeing to dismiss the 2011 Litigation, and the reasons for filing the Chapter 15 petition. DBSI also believes that these filings may also contain statements regarding whether DBSI was required to pay the Funds' settlement with the Madoff Trustee as a condition precedent to the sale of the claims, which the Funds argue is an affirmative defense to their claims. ECF No. 24 at 6-8, 14-15.

At the very least, DBSI is entitled to a description of the relevant and responsive information that the Funds have put before the BVI Court in their applications and submissions so that it can assess the importance of the documents to this litigation and inquire about them and determine whether there is a basis to challenge privilege or the withholding of relevant and responsive documents on confidentiality grounds.

### 2. Specificity Of The Request

DBSI's request that the Funds produce a log of the BVI Court Filings (including a log of privileged filings) is narrowly tailored. The Funds have represented that there are approximately 200 court filings in the BVI. Hammond Decl. Ex. 6. The only information that would be required

to be logged is information that is relevant and responsive to the discovery sought in this case. The tailored nature of DBSI's request weighs heavily in favor of requiring the production of a log of such materials, including any materials that the Funds claim are privileged. *See Gucci Am., Inc. v. Curveal Fashion*, 2010 U.S. Dist. LEXIS 20834, at *8 (S.D.N.Y. Mar. 8, 2010) (finding "narrowly tailored" requests "to produce a specific, discrete source of information" favored disclosure) (citations omitted); *Milliken*, 758 F. Supp. 2d at 246 (same).

### 3. Location Of Information And Parties

The Funds, while in liquidation in the BVI, voluntarily elected to come to New York, retain counsel in New York, enter into a trade confirmation agreement with DBSI governed by New York law, commence a litigation against DBSI in in the Southern District of New York to enforce such agreement, and then filed a Chapter 15 Petition in the bankruptcy court in the Southern District of New York. Moreover, while the actual BVI Court Filings are in the BVI, the Funds have indicated that copies of the filings are already collected and stored in the Funds' document review platform (presumably located in the U.S.). *See* Hammond Decl. Ex. 6. For this reason, this factor also weighs in favor of requiring the Funds to produce a log identifying the relevant and responsive information filed with the BVI Court.[6]

### 4. Balance Of National Interests

"The balance of competing interests of the United States and the foreign state is the most important factor in the analysis." *NML Capital v. Republic of Argentina*, 2013 U.S. Dist. LEXIS 17572, at *46 (S.D.N.Y. Feb. 8, 2013).

---

[6] Courts have noted that this factor is "of limited benefit to this analysis" because "when this factor was set forth by the Supreme Court . . . in 1987, movement of documents from other parts of the world was not accomplished electronically the way it is today, which now limits or eliminates much of the attendant costs, both in terms of time and money associated with producing remotely located evidence." *Tansey v. Cochlear Ltd.*, 2014 U.S. Dist. LEXIS 132021, at *9 (E.D.N.Y. Sept. 18, 2014).

The United States has a strong interest in ensuring that parties involved in U.S. litigation comply with U.S. discovery procedures. *See Laydon v. Mizuho Bank Ltd.*, 183 F. Supp. 3d 409, 423 (S.D.N.Y. 2016) ("[I]t has been repeatedly recognized that the United States has an 'obvious interest' in having its own procedural rules applied to discovery.") (quoting *Tansey v. Cochlear Ltd.*, 2014 U.S. Dist. LEXIS 132021, at *12 (E.D.N.Y. Sept. 18, 2014)); *Reino de Espana v. Am. Bureau of Shipping*, 2005 U.S. Dist. LEXIS 15685, at *11 (S.D.N.Y. Aug. 1 2005) ("[T]he United States has an undoubtedly substantial interest in fully and fairly adjudicating matters before its courts, which is only possible with complete discovery") (internal citations omitted); *In re Vivendi Universal, S.A. Sec. Litig.*, 2006 U.S. Dist. LEXIS 85211, at *13 (S.D.N.Y. Nov. 13, 2006) (same). Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26 (b)(1). Privilege logs are required under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 26(b)(5), and the Funds have failed to establish why they should be relieved of this obligation, particularly since the Funds chose to enter into a contract governed by New York law, have submitted to the jurisdiction of this Court, and have sought relief in this Court.

*First*, the Court should not be bound by the sealing orders from a foreign court—orders that the Court has not even seen—where there are clear and specific rules requiring the Funds to comply with their obligation to produce non-privileged responsive information and identify documents withheld on the basis of privilege. *See* Fed. R. Civ. P. 26 (b)(1); Fed. R. Civ. P (b)(5); *see Redeemer Comm. of Highland Credit Strategies Funds v. Highland Cap. Mgmt., L.P.*, 182 F. Supp. 3d 128, 133 (S.D.N.Y. 2016) (denying request to seal documents where Bermudian law required sealing because "considerations of international comity militating in favor of respect for Bermudan law are outweighed by the public interest in open access to court proceedings").

*Second*, to allow for the fair and proper adjudication of discovery disputes in this action, the Court must be able to assess the information over which the Funds are asserting privilege and confidentiality. *NML Capital*, 2013 U.S. Dist. LEXIS 17572, at *46 ("The United States has a vital interest in fully and fairly adjudicating matters before its courts.") (citing *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 248 (S.D.N.Y. 2010)). *Third*, whereas there are explicit rules in the United States requiring the Funds to furnish a privilege log or to produce relevant documents; by contrast, the Funds have cited no clear prohibition in the Sealing Orders (which they refuse to disclose) or under BVI law that would bar them from providing a log with respect to the BVI Court Filings. *Fourth*, the fact that the Funds have routinely availed themselves of the jurisdiction of this Court, and the Agreement at issue in this case is governed by New York law, again favor the United States' interest having its own procedural rules govern this action.

The Funds have not identified a national BVI interest that would justify deference to the Sealing Orders, which have been entered solely to maintain confidentiality for the Funds' benefit and not as the result of any national law or policy. *See Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 2009 U.S. Dist. LEXIS 33096, at *13 (S.D.N.Y. Apr. 17, 2009) (finding that the national interest of Indonesia did not weigh in favor of deferring to an injunction issued by an Indonesian court because the "injunction is not required by the Indonesian statute or indication of national policy"). In fact, there is no national law or policy that requires a sealed court file to remain sealed in all circumstances; rather, when determining whether sealed documents can be disclosed, the BVI Courts—similarly to U.S. courts—must weigh competing considerations, including in the principle of "open justice," which require that "ordinarily all relevant documents held by the parties should be disclosed and made available to both sides in

litigation to ensure that neither party is at a disadvantage against the other."  Chivers Aff. ¶ 80;[7] *see also* Phillips Aff. ¶ 36 (stating that "[e]ven if there is some confidentiality in a document, there is no absolute right to protection" and that "[t]here is a balancing exercise between the interests of persons which seek to assert confidentiality and those who seek to access the relevant documents" so "there is no absolute right for a court file to be kept sealed").  To the extent that the BVI Courts also have an interest in ensuring the confidentiality of proceedings that are subject to sealing orders, any such concerns about confidentiality would be addressed through the protective order entered in this case.  *See Bodner v. Paribas*, 202 F.R.D. 370, 376 (E.D.N.Y. 2000) ("[T]he use of an appropriate protective order should address the confidentiality concerns of defendants (and any concerns expressed by French law) with regard to the materials produced."); *see also* Phillips Aff. ¶ 37 ("To the extent that the US court has additional mechanisms to preserve confidentiality then this would also be a relevant factor that the BVI Court would take into account.").

Because the U.S. has strong interests in ensuring full discovery and fair trial, this factor weighs in favor of requiring the Funds to identify the BVI Court Filings that it claims are subject to the Sealing Orders.

### 5.  Availability Of Alternative Means Of Securing The Information

Here, there is no alternative means to secure information regarding the filings that the Funds are withholding.  All of this information lies with the Funds and their counsel only.  Accordingly, this factor weighs in favor of requiring the Funds to produce a log identifying the information that they are withholding, either due to the sealing order, a claim of privilege, or both.

---

[7] The Funds' declarant also states that "a [BVI] court will refuse disclosure [of a sealed document] if the *public* interest in maintaining confidentiality outweighs the general principles in favor of disclosure" and further acknowledges that he is "not aware of any instance where it has been suggested that materials filed by a liquidator with his appointing court and placed under seal are subject to public interest immunity . . . ."  Chivers Aff. ¶¶ 84-85.

### 6. Hardship To The Party

With regard to this factor, "[c]ourts have required that the party resisting discovery provide information on the likelihood that the party would be prosecuted for producing the requested documents." *NML v. Republic of Argentina*, 2013 U.S. Dist. LEXIS 17572, at *49. Generalized assertions regarding the prospect of sanctions is insufficient. *See id.* ("If the likelihood that the party resisting compliance will be prosecuted and convicted is 'slight and speculative' a court can order disclosure.") (citation omitted); *Milliken*, 758 F. Supp. 2d at 249 (noting that there is insufficient proof of hardship where party had cited "the prospect of [] sanctions" but had "cited no instance in which such sanctions have been imposed").

Although the Funds have expressed concern about violating the Sealing Orders, they have not established that they would be prosecuted or sanctioned for disclosing—let alone simply identifying—the documents filed with the BVI Court. The Funds' declarant states only that the liquidator "risks placing himself in civil and criminal contempt of the BVI court" for disclosing sealed materials without authorization, but such generalized assertions—without proof of sanctions being issued in other similar circumstances—are insufficient. Chivers Aff. ¶ 9(1); *see Laydon*, 183 F. Supp. 3d at 425 (defendants had failed to show hardship where they were "unable to cite a single instance in which a UK enforcement action was taken against an entity for violating the [relevant foreign law] by complying with discovery demands in the United States"). The Funds' declarant also acknowledges that he is "not qualified to offer an opinion as to whether the disclosure by a liquidator of his own evidence heard in private court proceedings would be a criminal contempt of court" under BVI law. Chivers Aff. ¶ 78. It is also doubtful that a BVI Court would seek to prosecute or sanction the liquidators for complying with their obligations in a New York litigation in which they are a defendant, particularly given that the BVI Court presumably

authorized the liquidators to submit to the jurisdiction of U.S. courts by authorizing the liquidators to negotiate and enter into a New York-law governed contract, commence a litigation in New York to enforce such contract, and then file a Chapter 15 petition in New York.

Moreover, the Funds' declarant acknowledges that the Funds could move the BVI Court for relief to modify the Sealing Orders, which would allow them to comply with their discovery obligations and avoid any hardship. *See* Chivers Aff. ¶¶ 9(1), 81. Thus, the potential hardship here—if any—is self-imposed. *Richmark Corp. v. Timber Falling Consultants*, 959 F. 2d 1468, 1477 (9th Cir. 1992) ("[I]f the hardship is self-imposed" or if the party "could have avoided" the hardship, "the fact that [the party] finds itself in an undesirable position will not work against disclosure of the requested information."). That the Funds choose not to take any action to remove any impediment that may exist to complying with their discovery obligations is not a basis for claiming hardship. And certainly, there is no logical reason why "the interests of justice" would preclude the Funds from producing non-privileged information that has been filed with the BVI Court in this case. To so find would be contrary to the interests of justice in full and fair disclosure.

Given their failure to establish the likelihood of sanctions for simply identifying documents included in the BVI Court Filings, this factor weighs in favor of requiring the Funds to abide by their discovery obligations.

### 7. Good Faith

The Funds have also failed to establish that their refusal to provide a log is a position taken in good faith. *First*, the Funds have not even attempted to seek accommodation from the BVI Court to allow them to comply with their U.S. discovery obligations. *See supra* at p. 13-15. Courts have found the absence of good faith where the parties have not requested permission from the foreign court to make disclosures or have only made a "generalized request" to make such

disclosures. *Asia Pulp & Paper Co.*, 2009 U.S. Dist. LEXIS 33096, at *14; *see also In re Societe National Industrielle Aerospatiale*, 782 F. 2d 120 (8th Cir. 1986) (giving party time to seek a waiver from the French authorities before the court would consider imposing sanctions for failure to produce documents and respond to interrogatories). Here, to DBSI's knowledge, the Funds have made no attempt to seek permission from the BVI Court to produce a log.

*Second*, the Funds' claim that strict adherence to confidentiality is required under the Sealing Orders—such that even a description of the filings cannot be provided—is contravened by the fact that the Funds have openly discussed the BVI Court Filings with other third parties. ██

██████████████████████████████████████████████████████

██████████ *See, e.g.*, Hammond Decl. Ex. 9, at -18471 (████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████).[8] The Funds should not be allowed to claim that they are prohibited from even identifying the BVI Court Filings when they have disclosed details of these filings in other contexts. The fact that DBSI is an adversary does not entitle the Funds to change their position on confidentiality.

Thus, all of the factors collectively weigh favor of adhering to United States law, including the Federal Rules of Civil Procedure, and compelling the production of a log.

---

[8] *See also* Hammond Decl. Ex. 10, at -5661 (████████████████████████████████

██████████████████ Hammond Decl. Ex. 11, at -5674 ██████████████████████████

██████████████████████████████████████████); Hammond Decl. Ex. 12, at -5830

(██████████████████████████████████.

## III. THE FUNDS SHOULD BE REQUIRED TO PRODUCE NON-PRIVILEGED DOCUMENTS AND LOG PRIVILEGED EXTERNAL COMMUNICATIONS IN THE POSSESSION OF MOURANT

The Funds also should be required to produce non-privileged documents and communications in the possession of Mourant, the Funds' outside counsel in the BVI liquidation proceedings, and to log any external communications with third parties that are purportedly privileged. ECF No. 53. Notwithstanding the fact that the parties have agreed to produce external counsel documents and communications, the Funds have refused to produce documents from Mourant on the basis that Mourant "was not involved in negotiating" the Agreement. ECF No. 54. But the Funds have acknowledged that Mourant was involved in the Funds' decision to commence Chapter 15 proceedings and the Funds' negotiations with the Madoff Trustee regarding the settlement of the adversary proceeding, which are also issues relevant to this dispute. Hammond Decl. Ex. 8 (identifying Mourant counsel Nicolas Fox and Eleanor Morgan in response to interrogatory nos. 6 and 7). The Funds fail to acknowledge that Mourant, who represents them in the BVI Court, would presumably have been responsible for preparing and submitting the BVI Court Filings (and therefore has possession of them) and would also be in possession, custody, and control of non-privileged documents and communications relating to these filings.[9]

## CONCLUSION

For the foregoing reasons, DBSI respectfully requests that this Court grant its Motion to Compel.

---

[9] The Funds further claim that Mourant "always copies the Liquidators on such communications from their own files." ECF No. 54. But any purported concerns about the duplicative nature of discovery should be given no credence in light of the Funds' overly broad approach to discovery in this action. For example, in addition to requiring that DBSI produce its communications with third party participants regarding the Allowed Claims at issue in this case, the Funds have also subpoenaed, to DBSI's knowledge, no fewer than eight current or former participants seeking the same documents and communications that DBSI is already obligated to produce.

24

Dated:    November 29, 2021          Respectfully submitted
          New York, New York

                                     s/ *Andrew W. Hammond*
                                     Glenn M. Kurtz
                                     Andrew W. Hammond
                                     Jacqueline L. Chung
                                     Timothy L. Wilson, Jr. (admitted *pro hac vice*)
                                     **WHITE & CASE**
                                     1221 Avenue of the Americas
                                     New York, NY 10020
                                     Telephone: 212-819-8200

                                     *Counsel for Deutsche Bank Securities Inc.*